Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **Violation(s) of Telephone Consumer Protection Act of 1991** |
| ALLIED FIRST BANCORP, INC., | |
| Defendants. | **Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs bring this action for injunctive relief and damages against Defendant, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff at all times herein mentioned was a resident of the County of San Diego, State of California.

2.      Defendant ALLIED FIRST BANCORP, INC. ("ALLIED" or "Defendant") is, and at all times herein mentioned was, a federally chartered community bank, incorporated in Maryland and headquartered in Oswego, IL, SEC CIK # 0001158865 doing business in the County of Orange, State of California.

3.      This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA").  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 132 S.Ct. 740, 753 (2012).

4.      At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

5.      At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

- 2 -

Complaint

## NATURE OF THE ACTION

6.    Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

Class:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from July 1, 2018 to the present, including up to and through trial, and*

7.    The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

8.    ALLIED is engaged in a scheme to sell financial consultation services and/or mortgage services via uninvited cold calls telemarketing, without regard to whether the numbers are on the protected federal Do Not Call Registry or not.

9.    Thus, ALLIED is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

Complaint

10.     The modus operandi is the same for all the calls in this case, ALLIED, either directly or through the use on an agent, calls various numbers in the United States with to sell ALLIED's financial services.

11.     ALLIED and/or its agent do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

12.     If a person, such as the Plaintiff, answers the call they will speak to a live person with ALLIED or to a screening agent who gathers information from the victim, then transfers the call to an ALLIED employee.

13.     The transferred call will be with a live agent who is a direct ALLIED employee or representative and who will continue and finish the sales pitch.

14.     Plaintiff alleges on information and belief that ALLIED is aware of the telemarketing calls to residential numbers on the Do-Not-Call Registry directly or directing an agent to use such methods for telemarketing.

15.     Alternatively, Plaintiff alleges on information and belief ALLIED is willfully ignorant of the use telemarketing calls to residential numbers on the Do-Not-Call Registry.

16.     These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

17.     ALLIED has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

## **FACTUAL DETAILS RE NAMED PLAINTIFF**

18.     Defendants made twenty-two (22) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their financial services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"), if any were transmitted:

- April 27, 2021, 11:57am CID 310-444-9494; Answered;
- April 27, 2021, 12:04pm CID 310-444-6512; Answered:
- April 27, 2021, 12:07pm CID 443-875-9331; Voicemail:
- May 7, 2021, 11:05am CID 562-443-3037; Answered:
- May 7, 2021, 11:10am CID Private Number; Voicemail:
- May 7, 2021, 11:52am CID 657-600-0113; Answered:
- May 13, 2021, 2:34pm CID 530-977-1428; Answered:
- May 13, 2021, 3:07pm CID 747-666-1688; Answered:
- May 20, 2021, 3:34pm CID 747-666-1688; Missed call;
- May 21, 2021, 12:37pm CID 747-666-1688; Missed call;
- May 26, 2021 3:46pm CID 747-666-1688; Missed call;
- May 27, 20211:048am CID 747-666-1688; Missed call
- May 27, 2021 1:00pm CID 747-666-1688; Missed call
- June 8, 2021, 3:33pm CID 747-666-1688; Missed call
- June 10, 2021, 10:43am CID 747-666-1688; Missed call
- June 30, 2021, 9:32am CID 747-666-1688; Missed call
- July 1, 20201, 9:57am CID 747-666-1688; Missed call
- July 1, 2021, 9:58am CID 747-666-1688; Missed call
- July 1, 2021, 10:33am CID 747-666-1688; Missed call
- July 6, 2021, 7:13am CID 747-666-1688; Missed call
- July 8, 2021, 10:35am CID 747-666-1688; Missed call
- July 8, 2021, 12:47pm CID 747-666-1688; Missed call

19.     Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

20.     Mr. Sapan made a log of all the calls he received from ALLIED during or shortly after receiving the calls which includes the date and time of the

Complaint

call and the Caller ID information all, and which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim and contains detailed notes as to answered calls.

21.    Mr. Sapan never gave any ALLIED or any other person, agent, employee or entity associated with ALLIED express written permission to call him, nor does he have an established business relationship nor personal relationship with ALLIED or any other person, agent, employee or entity associated with ALLIED.

22.    In just a the short four-month time span from April 27, 2021 to July 8, 2021, ALLIED transmitted Twenty-two (22) telemarketing calls to Mr. Sapan's residential phone (310-444-1999) to try to sell its services.

23.    In the first call on April 27, 2021 "Christine" called and, after Mr. Sapan picked, stated she was with "US Mortgage" asking about his interest in refinancing.  Plaintiff played along and "Christine" brought someone on the line from "Allied First Bank" after which the call was dropped.

24.    On the second April 27, 2021 call, "Christine" called the Plaintiff again and tried to connect the call to ALLIED again and it was connected through to "Mary Ann" from "Allied First Bank" who stated "Allied First Bank" was headquartered in Illinois but she was located in Maryland, then call was dropped.

25.    On the third call on April 27, 2021, "Mary Ann" from "Allied First Bank" called again and left a voice message for the Plaintiff.

26.    In the first May 7, 2021 "Sandra" called saying she was with "American Financial Network" asking about Plaintiff's interest in refinancing. Plaintiff played along to find out who was really behind this call and "Sandra" brought "Mark" from "Allied First Bank" on the line but then the call was dropped.

27.    On the second May 7, 2021 call "Mark" from "Allied First Bank" left a voice message for the Plaintiff.

Complaint

28.   On the third May 7, 2021 call, Plaintiff was again called by "Sandra" with "American Financial Network" asking about his interest in refinancing but, the call was dropped when "Sandra" tried to transfer it.

29.   On the first May 13, 2021 call, Plaintiff was again called by "Sandra" with "American Financial Network" and again the call dropped when "Sandra" tried to transfer it.

30.   On the second May 13, 2021 call, Plaintiff was called by a "Christine" with "Allied First Bank" asking about Plaintiff's interest in refinancing.  Plaintiff played along and "Christine" who tried to transfer the call but "Christine" said all of the lines were busy.

31.   This second May 13, 2021 call used the Caller ID Number 747-666-1688.

32.   Plaintiff then received fourteen more missed calls from Caller ID Number 747-666-1688, which is the exact Caller ID Number from the last call answered by Plaintiff which was from ALLIED.

33.   In each of the calls made by a direct ALLIED employee, the employee self-identified as being with ALLIED.

34.   In each of the calls Mr. Sapan answered and in which a transfer was successfully made the transfer was to a person who identified themselves as being with ALLIED.

35.   In all calls in which a voice mail was left the Plaintiff received a call from a direct employee or representative of ALLIED who left a voice message for Plaintiff on his phone and therefore ALLIED if liable for these calls.

36.   Plaintiff pleads on information and belief that any person whom he spoke with on any answered call is an employee directly for ALLIED, or in the alternative, is an agent of ALLIED making illegal telemarketing calls at the direction and control of ALLIED.

37.     Plaintiff pleads on information and belief that to the extent ALLIED relies on any agent or other entity to make telemarketing calls on its behalf, ALLIED has direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

38.     Alternatively, Plaintiff pleads on information and belief that the person acting making the initial call created the reasonable belief in the called victim that he/she/they were acting on ALLIED's behalf by always transferring every call to ALLIED or attempting to do so.

39.     Alternatively, Plaintiff pleads on information and belief that ALLIED ratified the making telemarketing calls on its behalf by its agents by knowing of the illegal conduct and failing to repudiate the conduct.

40.     Plaintiff alleges on information and belief that for all the missed calls an employee or representative of ALLIED made those calls for telemarketing purposes.

41.     Alternatively, Plaintiff alleges on information and belief that for all the missed calls that they were made by an agent of ALLIED or on the behalf of and at the direction of ALLIED for telemarketing purposes.

42.     Plaintiff alleges that since July 1, 2018 to present Defendant may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## LIABILITY OF ALLIED BANK

43.     In the answered calls Plaintiff was transferred to a person who said they were with "Allied First Bank" and in one of the calls (April 27, 2021, 12:04pm) the person on the line confirmed the location of "Allied First Bank" as Illinois.

44.     In all of the call in which a voice mail was left, Plaintiff received a voice mail from a person directly holding themselves out as being from "Allied First Bank".

45.     In all of the missed calls the same Caller ID Number (747-666-1688) was used as the last answered call (May 13, 2021, 3:07pm) in which Plaintiff was transferred to "Allied First Bank".

46.     In all of the calls involving a transfer, each and every successful transfer was to a person who self-identified as being with ALLIED.

47.     In all of the calls involving a transfer, Plaintiff pleads on information and belief that each and every unsuccessful transfer was an attempt to transfer to ALLIED.

48.     Plaintiff pleads on information and belief that the officers, managers and employees for ALLIED knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made.

## FINAL LIABILITY ALLEGATIONS

49.     Plaintiff pleads on information and belief that to the extent ALLIED uses any agents to make calls, ALLIED has ordered their agent to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for its benefit.

50.     Plaintiff pleads on information and belief that to the extent ALLIED uses any agents to make calls, ALLIED knew or reasonably should have known (implied agency), that its agents were was making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers.

51.     Plaintiff pleads on information and belief that to the extent ALLIED uses any agents to make calls, ALLIED explicitly condoned the actions of such agents in making the illegal telemarketing calls to numbers on the National "Do-

Complaint

Not-Call" Registry and using prerecorded voice calls to residential numbers for its benefit by condoning their actions afterwards.

52.     Plaintiff pleads on information and belief that to the extent ALLIED uses any agents to make calls, ALLIED implicitly condoned the actions of such agents in making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers for its benefit by condoning their actions afterwards.

53.     Plaintiff pleads on information and belief that to the extent ALLIED uses any agents to make calls, ALLIED explicitly hired such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and to use prerecorded voice calls to residential numbers for the benefit of ALLIED.

### ACTUAL HARM & WILFUL AND KNOWING CONDUCT

54.     The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

55.      Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

56.     Plaintiff has been harmed by the junk calls complained of herein by the invasion of his privacy,

57.     Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

58.     Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

59.     During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

60.     As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

61.     Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

62.     Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

63.     **Description of the Class**:  Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

Class:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a*

*residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from April 21, 2018 to the present, including up to and through trial.*

64.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

65.     Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

66.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant' call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

67.     **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the

Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

    a.    Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

    b.    Whether class members placed their numbers on the Do Not Call Registry.

    c.    Whether the transmission of these calls was done willfully or knowingly by Defendant.

    d.    Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

    68.    **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant' common course of conduct since Defendant' have repeatedly called the Class to sell their financial products.

    69.    **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

    70.    **Superiority of a Class Action**: Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly

Complaint

burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

71.     Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

72.     Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

73.     Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

74.     Subsection (c) of Section 227 of Title 47 of the United States Code authorizes the Federal Communications Commission and Federal Trade

Commission to promulgate regulations creating a federal Do Not Call Registry and defining violations of it.

75.     Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

76.     At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

77.     Defendant have called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

78.     Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder.  Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both.  If the court finds that Defendant' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

- 15 -

Complaint

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);

2. For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

3. For attorney's fees pursuant to all applicable federal and state statutes;

4. For costs of suit herein incurred; and

5. For such further relief as the Court deems proper.

DATED: June 27, 2022               **PRATO & REICHMAN, APC**


                                   /s/Christopher J. Reichman, Esq.
                                   By: Christopher J. Reichman, Esq.
                                   **Prato & Reichman, APC**
                                   Attorneys for Plaintiff,
                                   Paul Sapan